# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

**GEORGE DELGADILLO**                                                    **PETITIONER**
**Reg #17656-280**

**VS.**                          **CASE NO.: 2:12CV00174 BD**

**T.C. OUTLAW, Warden,**
**Federal Correctional Complex,**
**Forrest City, Arkansas**                                              **RESPONDENT**

## MEMORANDUM OPINION AND ORDER

Petitioner George Delgadillo, an inmate in the Federal Correctional Institution in

Forrest City, Arkansas ("FCI-FC"), brings this 28 U.S.C. § 2241 petition for writ of

habeas corpus (docket entry #1) challenging a prison disciplinary conviction.  Warden

T.C. Outlaw has responded to the petition (#6), and Mr. Delgadillo has replied (#12).  For

the following reasons, Mr. Delgadillo's petition is DENIED and DISMISSED, with

prejudice.

Also Pending is Mr. Delgadillo's motion for declaratory judgment.  (#13)  For the

same reasons the petition is denied, Mr. Delgadillo's motion (#13) is also DENIED.

## I.    Background

Mr. Delgadillo is currently serving a 70-month federal sentence.  On February 14,

2011, he entered the FCI-FC's Residential Drug Abuse Program ("RDAP").  The RDAP

offers inmates incentives for successfully completing the program.  One incentive is

eligibility for a one-year reduction in the inmate's sentence.  18 U.S.C. § 3621(e)(2)(B).

On March 19, 2012, while still a student in the RDAP, a fellow student attacked Mr. Delgadillo with a weapon.  Surveillance video showed that Mr. Delgadillo threw at least one punch at the aggressor, apparently in self defense.  (#1 at p. 23)

Mr. Delgadillo successfully completed the institutional portion of the RDAP on March 29, 2012.  (#1, at p. 20)  FCI-FC officials also completed the documentation for Mr. Delgadillo's transfer to a Residential Reentry Center ("RRC").  This transfer was to occur on June 1, 2012.  (#1, at p. 21)  Mr. Delgadillo's early release to an RRC was the result of incentives earned through RDAP participation.

On May 15, 2012, FCI-FC officials issued an incident report charging Mr. Delgadillo with fighting on March 19, 2012.  (#1 at p. 22)  FCI-FC officials held a disciplinary hearing on May 23, 2012.  On June 6, 2012, FCI-FC officials found Mr. Delgadillo guilty of fighting.  (#1, at pp. 22-24)  Mr. Delgadillo lost good-conduct time as a result of the conviction.  Although there is no documentation in this record, it appears that Mr. Delgadillo also lost his RDAP early release incentive due to the fighting conviction.

Mr. Delgadillo argues that the delay in charging him with fighting and his loss of incentives violated his due process right.  Respondent argues that Mr. Delgadillo had no constitutional right to due process in the prison disciplinary process and that early release through RDAP incentives is wholly discretionary.

2

II.     **Discussion**

In the prison setting, inmates are entitled to due process protections, but at a

substantially limited level.  When revoking good conduct time, these due process rights

are: (1) advanced written notice of the disciplinary violation; (2) an opportunity, with

some exceptions, to call witnesses and present a defense; and (3) a written statement by

the fact-finders as to the evidence relied upon and the reasons for the disciplinary action

taken.  *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007)(citing *Superintendent v. Hill*,

472 U.S. 445, 454, 105 S.Ct. 2768 (1985) and *Wolff v. McDonnell*, 418 U.S. 539, 564-

571, 94 S.Ct. 2963 (1974)).  There is no question here that Mr. Delgadillo received these

procedural protections; the only issue is the long delay in charging Mr. Delgadillo with a

disciplinary violation. (#1 at pp. 22-24)

A.     *Evidence Supporting the Disciplinary Conviction*

In addition to the procedural requirements for disciplinary proceedings, prison

officials must support disciplinary convictions with "some evidence" to comport with due

process requirements.  *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011)(citing

*Superintendent*, 472 U.S. at 455, 105 S.Ct. at 2774).  In determining whether there was

some evidence to support the disciplinary conviction, the Court is not called upon to

examine the entire record, to independently assess the credibility of witnesses, or to weigh

the evidence.  *Id*.  Instead, the relevant question is whether there is evidence in the record

that supports the disciplinary conviction.  *Id*.

In this case, a video showed that an inmate attacked Mr. Delgadillo and that Mr. Delgadillo threw at least one punch in self-defense.  (#1 at p. 23)  Throwing a punch, even in self-defense, is some evidence to support a disciplinary conviction for fighting.

This Court is not free to weigh the evidence or evaluate the fairness of Mr. Delgadillo's disciplinary conviction.  Instead, the Court is bound by a deferential standard:  Was there "some evidence" to support the conviction?  The video evidence in this case satisfies the "some evidence" standard.

B.    *Delay in Disciplinary Conviction*

Mr. Delgadillo's claim rests in part on the fifty-seven-day delay between the fight and the issuance of the disciplinary.  During this delay, Mr. Delgadillo received a certificate for his successful completion of the institutional portion of the RDAP.  (#1, at p. 20)  He also prepared for his authorized transfer to an RRC that was scheduled for June 1, 2012.  (#1, at p. 21)

It appears, as Mr. Delgadillo alleges, that the Bureau of Prisons ("BOP") failed to follow its own policy regarding the issuance of Mr. Delgadillo's disciplinary charge.  Under 28 C.F.R. § 541.5(a), an inmate will ordinarily receive an incident report within twenty-four hours of the BOP staff's becoming aware of the incident.  Clearly that did not occur here.  As Respondent correctly notes, however, the twenty-four-hour time frame is not mandatory.  (#6 at pp 2-3)  Inclusion of the word "ordinarily" as a modifier for "within twenty-four hours" shows that the time limit is not mandatary.  It also shows,

4

however, that twenty-four hours was the amount of time that drafters of the regulation

thought to be reasonable for investigating an incident and issuing a report.

At least one court has found that the BOP should show good cause for departing

from its own time frames. *Lopez v. Bureau of Prisons*, 221 F.3d 1339 (7th Cir. 2000)

(BOP has discretion to depart from time frames in 28 C.F.R. for good cause).  Possibly in

an attempt to show good cause, Respondent states that it took BOP staff time to

investigate whether Mr. Delgadillo committed a disciplinary violation.  (#6, at p. 3)  This

explanation strains credulity.  An FCI-FC official called Mr. Delgadillo into his office the

day after the fight.  (#1, at p. 23)  The same day, the official reviewed the recorded video

tape.  (#1, at p. 23)  This was fifty-six days before issuance of the incident report.  For

some reason, and despite calling Mr. Delgadillo into the office the day after the fight, the

official did not interview Mr. Delgadillo until April 12, 2012.  (#1, at p. 23)  FCI-FC

officials waited until May 15, 2012, to issue the incident report charging Mr. Delgadillo

with fighting.  (#1, at p. 22)  The disciplinary hearing officer did not use any evidence

collected after the April 12, 2012 interview when determining Mr. Delgadillo's guilt.

(#1, at p. 23)

As Respondent notes, BOP regulations can provide more protection than the

Constitution requires, but the regulations do not raise the standard of constitutional due

process. *Goff v. Dailey*, 991 F. 2d 1437, 1442 n. 9 (8th Cir. 2003).  The regulations

themselves do not create a liberty interest or define the procedural requirements of due

process. *Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011). So even if the BOP failed to follow its own regulations, this failure standing alone cannot support a constitutional due process claim. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003).

Mr. Delgadillo claims, however, that the delay denied him due process. (#12) Respondent states that Mr. Delgadillo "has no constitutional right to due process in the prison disciplinary process." (#6 at p. 2) This statement is not necessarily true. Mr. Delgadillo does not have a liberty interest in the procedures used to determine his confinement. *Id*. But when, as here, good conduct time is revoked, Mr. Delgadillo's interest has "real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause." *Wolff*, 418 U.S. at 557.

Reduction in a sentence for RDAP completion, like reduction of a sentence for good conduct, is discretionary. See *Zacher v. Tippy*, 202 F.3d 1039, 1041 (8th Cir. 2000) (the language of section 3621(e)(2)(B) is permissive, stating that the BOP "may" grant early release, but not guaranteeing eligible inmates early release). A change in sentence reduction eligibility, however, does not implicate a protected liberty interest. *Id*. at 1045-46 (inmate's change in sentence-reduction eligibility status does not implicate a liberty interest protected by the Due Process Clause); *Gore v. Fondren*, 2008 WL 4787652 (D. Minn. Oct. 31, 2008)(under BOP Regulations governing the RDAP sentence reduction program, an inmate found guilty of fighting may lose eligibility for a RDAP sentence

reduction); Bureau of Prisons Program Statement 5331.02 (inmate may lose early release eligibility at any time).

Even if FCI-FC officials had already transferred Mr. Delgadillo to the RRC, loss of this placement would not provide the basis of a due process claim.  See *Staszak v. Romine*, 221 F.3d 1344 (8th Cir. 2000) (unpublished) (citing *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir.1996)(placement in a halfway house did not provide the sort of substantial freedom that gives rise to a liberty interest inherent in the Due Process Clause; revocation of halfway-house placement was not an atypical or significant deprivation of liberty interests).

Mr. Delgadillo does not have a liberty interest in receiving a sentence reduction, or any incentive, for RDAP completion.  *Cf. Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104 (1979) (there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.); *Giannini v. Fed. Bureau of Prisons*, 405 F. App'x 96, 97 (8th Cir. 2010)(unpublished) (citing *Richardson v. Joslin*, 501 F.3d 415, 420 (5th Cir. 2007)(neither the Due Process Clause nor 18 U.S.C. § 3621(e)(2)(B) creates a liberty interest in receiving a sentence reduction upon completion of the RDAP)).

Further, it appears that Mr. Delgadillo has not completed all the components of the RDAP.  In addition to completing the institutional portion of the RDAP, inmates must also complete the Transitional Drug Abuse Treatment ("TDAT") component to

successfully compete RDAP.  See *Staszak*, 221 F.3d 1344 (unpublished)(early release was conditioned on completion of both the institutional and community transition components of the drug treatment program); 28 C.F.R. § 550.53(a)(3)(inmates who have completed the unit-based program must successfully complete community-based drug abuse treatment in a community-based program to have successfully completed RDAP); 28 C.F.R. § 550.56(a)("For inmates to successfully complete all components of RDAP, they must participate in TDAT in the community.").

Before his disciplinary conviction, Mr. Delgadillo was scheduled to participate in the TDAT from June 1, 2012, to September 28, 2012.  (#1, at p. 21)  It appears that Mr. Delgadillo has not participated in TDAT yet.  Accordingly, he has not completed all RDAP components.  His early release was conditioned on completion of all RDAP components.

Mr. Delgadillo has not established a protected liberty interest in receiving a more timely disciplinary charge or RDAP incentives.  He also has failed to show that he completed all components of the RDAP to be eligible for RDAP incentives.  Accordingly, Mr. Delgadillo has not established the basis for habeas relief.

## III.   Conclusion

FCI-FC officials afforded Mr. Delgadillo all of the process he was due, and his disciplinary conviction is supported by some evidence.  Mr. Delgadillo did not have a protected interest in receiving RDAP incentives or a more timely disciplinary charge.

Accordingly, George Delgadillo's petition for a federal writ of habeas corpus is DENIED.

His motion for declaratory judgment (#13) is also DENIED.

    This case is DISMISSED, with prejudice, this 27th day of March, 2013.

_____
UNITED STATES MAGISTRATE JUDGE